Willis Marie SIEBER, Respondent,

v.

Fred W. SIEBER, Appellant.

Nos. 46859, 47173.

Supreme Court of Minnesota.

Sept. 2, 1977.

Firestone, Fink, Krawetz, Miley & Maas, St. Paul, James P. Miley and William W. Fink, for appellant.

Kempe & Murphy and Arnold E. Kempe, West St. Paul, for respondent.

Heard before SHERAN, C. J., and RO-GOSHESKE and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

In response to a postdivorce order to show cause for nonpayment of alimony, defendant, Fred W. Sieber, petitioned for an order terminating alimony on allegations of changed circumstances. Following an evidentiary hearing on the issue of whether defendant should be held in contempt of court for nonpayment of alimony and upon extensive affidavits and depositions on the issue of termination of alimony, the findings and recommendations of a referee of the Family Court Division of the District Court of Ramsey County were adopted by the family court judge. Defendant was thereby ordered to pay arrearages upon penalty of contempt, and his petition for termination of alimony was denied. These appeals from said order and from a denial of defendant's post-trial motion for amended findings or a new trial raise the principal issue of whether the family court's refusal to terminate alimony was an abuse of discretion. Collateral issues are whether the referee erred in refusing to grant defendant a 3-day evidentiary hearing on his petition to terminate alimony, and whether the approval and adoption of the referee's findings in the absence of a transcript of defendant's oral testimony violated our holding in *Peterson v. Peterson*, Minn., 242 N.W.2d 88 (1976). We affirm the decision of the family court.

After almost 20 years of marriage, plaintiff, Willis Marie Sieber, obtained a divorce from defendant on September 11, 1970. Under the terms of the divorce decree, plaintiff was awarded approximately 45 percent of the marital property, consisting primarily of the homestead and shares of stock valued at approximately $25,000. Defendant was further ordered to pay plaintiff monthly alimony in the sum of $350, which was later reduced to $300 per month under a joint stipulation executed between the parties.

Defendant appears to have paid his alimony obligation with reasonable faithfulness until the early part of 1975, when he discontinued making payments entirely. Plaintiff then obtained an order requiring defendant to show cause why he should not be held in contempt of court. Defendant responded by filing a petition for an order terminating alimony alleging a material change in his financial ability to pay. At this time defendant also filed a petition requesting a 3-day evidentiary hearing on the issue of the elimination of alimony on the grounds that plaintiff had destroyed defendant's insurance business by making harassing telephone calls to defendant's clients, that plaintiff had entered into a meretricious relationship with another man, and that the state of defendant's mental health was such that he was forced to give up his employment. Since the issue of termination of alimony was immaterial, in the referee's opinion, to the question of defendant's alleged contempt, the petition for an evidentiary hearing was denied.

On December 22, 1975, the referee heard oral testimony limited to the issue of whether defendant should be held in contempt for refusal to pay alimony. Thereafter, both parties were given the opportunity to file numerous affidavits on the issues raised by defendant's motion to terminate alimony. On March 15, 1976, the referee issued findings and recommendations to the effect that defendant was in contempt of court for failing to pay alimony and that there had been no showing of a substantial change of circumstances to justify modifying the original alimony award. These findings were approved on the same date by the family court judge, and a subsequent motion for amended findings or a new trial was denied. Defendant's sentence of 20 days in the Ramsey County workhouse was stayed for 1 year conditioned upon his payment of arrearages and resumption of monthly alimony payments.

■ 1. Defendant first argues that the refusal of the referee to schedule an evidentiary hearing denied him due process of law under Minn.Const. art. 1, § 7, and his Sixth Amendment right to confront and cross-examine witnesses. Both of these arguments are without merit. The confrontation clause of the Sixth Amendment relates solely to criminal trials,[1] and the due process to which defendant is entitled on a petition to terminate alimony is expressly provided by Rule 17, § 1.07, Special Rules of Family Court, Second Judicial District, which provides in part:

"All Motions, except for custody or contempt proceedings or Motions to vacate a Judgment and Decree, shall be submitted on Affidavits and argument of counsel unless otherwise ordered by the Court, in its discretion, upon good cause shown."

We have previously held that evidentiary hearings ordinarily need not be conducted to consider alteration of alimony or support payments when the evidence can be fairly and more expeditiously presented by affidavits and documentary evidence. *Saturnini v. Saturnini*, 260 Minn. 494, 110 N.W.2d 480 (1961). When the facts, as in the present case, are relatively uncomplicated, we are persuaded that it is not an abuse of discretion for a family court referee to restrict the presentation of evidence to nonoral testimony.

■ 2. Equally untenable is defendant's contention that the family court abused its

---

1. See, *United States v. Zucker*, 161 U.S. 475, 16 S.Ct. 641, 40 L.Ed. 777 (1896); McCormick, Evidence (2 ed.) § 252.

discretion in refusing to terminate the alimony awarded pursuant to stipulation by the original divorce decree. Authority is vested in the court to alter or amend alimony provisions by Minn. St. 518.64:

"After an order or decree for alimony or support money, temporary or permanent, * * * the court may from time to time, on petition of either of the parties revise and alter such order or decree respecting the amount of such alimony, or support money, * * * and may make any order respecting these matters which it might have made in the original proceeding * * *."

The cases are legion supporting the position that the discretion conferred on the family court judge to amend prior alimony orders is to be exercised cautiously, and any alteration must be based on a clear showing of a substantial change of circumstances in one or both of the parties. See, *Ramsay v. Ramsay*, 305 Minn. 321, 233 N.W.2d 729 (1975); *Rubenstein v. Rubenstein*, 295 Minn. 29, 202 N.W.2d 662 (1972); 6A Dunnell, Dig. (3 ed.) § 2805. Moreover, when the amount of alimony has been fixed by stipulation between the parties at the time of divorce, as occurred in the instant case, the court should be even more reluctant to alter the terms of the decree. See, *Kaiser v. Kaiser*, 290 Minn. 173, 186 N.W.2d 678 (1971); *Kate v. Kate*, 234 Minn. 402, 48 N.W.2d 551 (1951).

■■■ Measured against these narrow standards, there is little doubt that the court did not abuse its discretion in denying defendant's petition. It is undisputed that plaintiff is almost totally dependent on the monthly payments for support. Her itemized monthly expenditures total approximately $450, and apart from her alimony allowance of $300, her only source of in-come is the sale of stocks that were awarded to her at the time of divorce. There is little indication that plaintiff is employable since she has diabetes and is apparently suffering somewhat from alcoholism. Although defendant's financial situation is not as good as it was when the parties were divorced, he has not, in our opinion, adequately proved that he is unable to meet his alimony payment schedule. In October 1974, defendant sold his insurance business for $111,800 under an installment contract whereby he was to receive $1,500 per month. This money, if properly invested, could certainly be a source of considerable future income for defendant.[2] While we recognize that defendant's employment since the sale of his business has been sporadic, there is no evidence that he could not engage in gainful employment if he cared to do so. Finally, defendant introduced almost no evidence by affidavit or otherwise that his standard of living has so substantially changed since the time of divorce as to justify termination of a stipulated obligation.

■■■ 3. We are also not persuaded that the existence of a meretricious relationship between plaintiff and another man, standing alone, is a sufficient ground to justify termination of her alimony. At one time, postdivorce immoral conduct was viewed by some courts as an independent ground for either reducing or terminating alimony. See, e.g., *Weber v. Weber*, 153 Wis. 132, 140 N.W. 1052 (1913); Annotation, 6 A.L.R.2d 859. Older decisions can also be found from this court which held that an ex-wife's sexual misconduct could be a factor in determining whether or not to terminate alimony, but it is significant that none of these cases ever held that postdivorce misconduct was sufficient per se to justify

2. We also reject defendant's argument that the family court is forcing him to deplete his capital assets acquired from the sale of his business. It is true that as a general rule alimony payments are to be derived from "future income or earnings". Minn. St. 518.54, subd. 3. But, when an ex-husband voluntarily liquidates his business, a capital asset, and thereby diminishes his future earning capacity, we believe that it would be unjust to hold that he is automatically relieved of future alimony payments, even if it ultimately becomes necessary to pay the ex-wife a portion of the proceeds from the sale.

alteration of the original decree. See, *Martens v. Martens*, 211 Minn. 369, 1 N.W.2d 356 (1941); *Wilhelm v. Wilhelm*, 201 Minn. 462, 276 N.W. 804 (1937); *Lindbloom v. Lindbloom*, 180 Minn. 33, 230 N.W. 117 (1930); Note, 19 Minn.L.Rev. 218. The more modern approach to this problem, which we now endorse, is to disregard a meretricious relationship except in so far as it might improve an ex-spouse's economic well-being.[3] See, Clark, Domestic Relations, § 14.9(6). Since there is nothing in the present record to indicate that plaintiff's paramour ever paid her more than $50 per month for rent, the family court did not err in finding that defendant's alimony payments should not be terminated.

4. Finally, we are unconvinced that the family court "rubber stamped" the recommendations of the referee without making independent findings of its own. In *Peterson v. Peterson*, Minn., 242 N.W.2d 88, 93 (1976), we held that the findings and recommendations of a family court referee are "advisory only and possess no more than prima facie validity" and that "[t]he family court judge has the duty and retains the ultimate responsibility to make an informed and independent decision" on a custody motion. We later held in *Berg v. Berg*, Minn., 244 N.W.2d 149 (1976), that the reasoning in *Peterson* applies to all domestic matters incident to a divorce. In denying defendant's motion for amended findings or a new trial, the family court judge clearly stated that his decision was based on "all the files, records and proceedings herein." The fact that this determination was made without a transcript of the hearing on the issue of defendant's contempt is not significant, for all of the evidence relative to termination of alimony was before the judge in affidavit form and, as the judge's explanatory memorandum clearly demonstrates, was fully and fairly considered.

Affirmed.

**3.** This approach was at least implicitly followed by our more recent decision in *Bissell v. Bissell*, 291 Minn. 348, 191 N.W.2d 425 (1971).