MARY JENNETTE VYSKOCIL, Petitioner and Counterrespondent-Appellant, *v.* LEONARD VYSKOCIL, Respondent and Counterpetitioner-Appellee.

First District (5th Division)    No. 80-459

Opinion filed August 14, 1981.—Rehearing denied September 16, 1981.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann, of counsel), for appellant.

Richard T. Sikes and Richard J. Billik, Ltd., of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal is taken from an order of the circuit court of Cook County modifying a judgment entered by a Minnesota State court. On appeal, these contentions are presented for review: (1) the court erred in ignoring the agreement of the parties that provided for modification; (2) the court erred in the terms specified for the payment of support arrearage; and (3) the court did not properly apply the terms of the judgment in its order setting the provisions for life insurance. The pertinent facts follow.

Mary Jennette Vyskocil (petitioner) and Leonard Vyskocil (respondent) were granted a divorce by a Minnesota State court on June 19, 1969. The judgment incorporated a written agreement of the parties providing for child custody, visitation, alimony, modification of alimony, division of property and attorneys fees. The agreement provided in pertinent part that respondent would pay petitioner $660 a month until she remarries, at which point he would pay $250 a month as child support. He also agreed to pay additional alimony in an amount equal to one-third of all salary increases over and above $25,000 per year. Modification of defendant's obligation to pay alimony and support payments was based in part on petitioner's "outside income." Outside income included compensation, dividends or interest received by petitioner from any corporation in which her family has a financial interest. It excluded personal earnings from employment and receipts from the trust fund established by her father. If respondent has gross compensation of $25,000 or less a year and petitioner has outside income of more than $200 per month, then respondent was entitled to reduce alimony dollar for dollar for every dollar of petitioner's outside income that was more than $200 per month. If respondent's gross compensation exceeded $25,000 per year, then petitioner could receive an additional $20 per month in outside income for each $10,000 of respondent's gross compensation over $25,000. If respondent's gross compensation was $35,000 per year, then petitioner could receive outside income of $500 per month before the stated reductions would take effect. If respondent's gross salary exceeded $35,000 per year, petitioner's outside income still remained fixed at $500 per month.

The decree also provided that respondent was to keep in full force

and effect, in all events and at his cost, a life insurance policy on his life in the amount of $100,000 with petitioner as beneficiary.

Petitioner registered this judgment in Illinois in 1977 and then filed a petition seeking to establish arrearages, maintenance of a life insurance policy, payment of proceeds from the sale of a parcel of property, and attorneys fees and costs. Respondent, who has since remarried, counter-petitioned for a reduction on the amount of support he is to pay, alleging a substantial change in circumstances.

At trial, respondent testified that he has paid approximately $100,000 under the judgment and additional amounts for nursery school and private school for the parties' child, Leslie. He stated that his current home is in Omaha, Nebraska, and cost $107,000, with a present mortgage of $86,000. His yearly income is $62,000. He also indicated that his present wife does not contribute financially to the mortgage payments and further that he has a monthly deficit after paying alimony of $603.16, which he makes up each year by using the refund he gets from his income tax.

Upon cross-examination, petitioner introduced an exhibit which showed $98,965 in unaccounted-for monies of respondent for the past 10 years. Tax refunds amounted to $46,065, assets from the sale of the marital home and Connecticut property totalled $33,000, and net proceeds from the sale of his Buffalo Grove, Illinois home, less his downpayment on the Omaha home, equalled $19,900. Respondent also testified that the Minnesota decree required him to carry a life insurance policy which was in existence at the time of the divorce; however, it expired in 1977, and he did not replace it.

Petitioner testified that she purchased a home in Colorado for $48,500 in 1977. Her mortgage was $45,000 and the home has a current value of $70,000. She owns an eight-unit building in California for which she paid $75,500 in 1974. Her estimate of its market value is $90,000 to $100,000, and her gross receipts for rents are approximately $14,000 a year. She receives $120 a month from oil royalties and is the beneficiary of a trust fund from which she receives $2,000 a year. She has no savings, stocks or bonds. Her debts include the mortgages on her home and apartment building, a monthly car note of $161 a month, a doctor bill of $350, $7,698.67 owed to her Massachusetts attorney and $4,296.47 owed to her Minnesota attorney.

At the conclusion of the hearing, the trial court determined that the Minnesota judgment should be modified. The court ordered that:
(1) alimony and support payments be reduced to $700 a month;
(2) respondent pay the arrearage of $15,631.76 at the rate of $300 a month; and

(3) the $100,000 life insurance policy should be maintained until petitioner dies or remarries.

OPINION

Petitioner initially argues that the court erred in modifying the alimony and support payments incorporated in the Minnesota divorce decree. We agree.

■■ At the outset, we point out that the Minnesota decree is entitled to full faith and credit from Illinois courts and will be construed under the laws of Minnesota. (*In re Marriage of Veltman* (1980), 82 Ill. App. 3d 32, 401 N.E.2d 1090.) The Minnesota statute and the Illinois statute[1] are similar in their requirements for modification. Minnesota statute 518.64 (31 Minn. Stat. Ann. §518.64 (1969)) allows the court to "revise and alter * * * the amount of * * * alimony" granted in a divorce decree upon a showing of a substantial change in circumstances in one or both of the parties. (*Mark v. Mark* (1957), 248 Minn. 446, 80 N.W.2d 621.)[2] In each case, however, the discretion should be exercised cautiously. (*Sieber v. Sieber* (Minn. 1977), 258 N.W.2d 754; *Bissell v. Bissell* (1971), 291 Minn. 348, 191 N.W.2d 425.) Moreover, "the fact that the financial rights and obligations of the parties have been fixed in the divorce decree as a result of stipulation is an important consideration restraining, although not controlling, the court's authority." *Epstein v. Epstein* (Minn. 1978), 268 N.W.2d 50, 51; *Kaiser v. Kaiser* (1971), 290 Minn. 173, 186 N.W.2d 678.[3]

In this instance, we must determine whether the trial court's findings justify a modification in petitioner's maintenance and support payments. The record discloses that there existed an agreement between the parties, which was incorporated into the decree, detailing the formula to be used to determine increases and decreases in respondent's maintenance and support obligations. Decreases in payments were based on petitioner remarrying, her "outside income" or amounts of inheritances, both as limited by the agreement. Increases were based on respondent's gross compensation. This agreement should have been a restraining factor against modification. Further, the subsequent remarriage of a divorced husband, as his own voluntary act, is not of itself a circumstance which justifies a revision of maintenance. (*Mark.*) While children of a second marriage can be a consideration in revising maintenance payments, we

---

[1] "* * * [T]he provisions of any judgment respecting maintenance or support may be modified * * * upon a showing of a substantial change in circumstances." Ill. Rev. Stat. 1979, ch. 40, par. 510(a).

[2] See *Baker v. Baker* (1975), 28 Ill. App. 3d 680, 329 N.E.2d 408.

[3] See *Simmons v. Simmons* (1979), 77 Ill. App. 3d 740, 396 N.E.2d 631, where the court found that the parties' intent to restrict the modification of the property settlement agreement was clearly manifested and there was no claim of unconscionability. See *Wohl v. Wohl* (1975), 28 Ill. App. 3d 298, 328 N.E.2d 138.

cannot unreasonably curtail or ignore the necessities or wants of the first wife and child. (See *Mark*.)[4] The respective incomes of the parties clearly indicate respondent's annual compensation has improved substantially while, concomitantly, petitioner's financial resources are quite limited. Petitioner's income from the apartment building is minimal and the evidence discloses that necessary repairs to the building will further deplete this income. Moreover, this apartment building was purchased with funds secured from the divorce settlement. Petitioner's trust fund income was exempted from consideration in the agreement and further it amounts to only $2,000 yearly. Monthly income from the oil royalty is also minimal. Respondent participated in a very detailed financial agreement with petitioner and received the benefits thereof. He should not be allowed now to request a modification of his maintenance and support payments without a positive showing of a substantial change in circumstances, which he has failed to adequately put forth. See *Abbott v. Abbott* (Minn. 1979), 282 N.W.2d 561.[5]

■■ Petitioner next argues that the court abused its discretion in ordering payment of arrearages at $300 per month without interest. We could locate no Minnesota authority on point. However, a recent Illinois Supreme Court opinion proved very illuminating. It held that:

"* * * [A] divorce proceeding partakes so much of the nature of a chancery proceeding that it must be governed to a great extent by the rules that are applicable thereto. (Citation.) In a chancery proceeding, the allowance of interest lies within the sound discretion of the trial judge * * * whose determination will not be set aside absent an abuse of that discretion." *Finley v. Finley* (1980), 81 Ill. 2d 317, 332, 410 N.E.2d 12.

We have examined the record and conclude that, under this standard, it was not an abuse of discretion to forego awarding interest.

Finally, petitioner argues that the trial court should have provided that respondent maintain a whole life policy rather than term insurance on his life.

The pertinent parts of the 1969 Minnesota decree provide:

"That the defendant shall keep in full force and effect, absolutely and in all events, at defendant's sole cost and expense, policy number 156547 issued by Northwestern Mutual Life Insurance Company on the defendant's life, in the principal amount of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, and further to maintain the plaintiff as beneficiary, without the right of assignment, under said policy until such time as plaintiff shall remarry, or be deceased * * *."

---

[4] See *Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 410 N.E.2d 441.
[5] See *In re Marriage of Parks* (1980), 83 Ill. App. 3d 372, 403 N.E.2d 1346.

The decree does not specifically provide for a whole life policy, only that respondent keep the policy in question in force. The agreement is very detailed in its provisions for modification of support payments and could have specifically provided for a whole life policy had the parties intended such. There is no language in the judgment requiring conversion of this policy to a whole life policy. As such, we believe that the court's finding and resultant order[6] adhere to the intent of the parties, and adequately protect petitioner's interest.

For the foregoing reasons, we reverse the circuit court's order in part insofar as it modifies alimony and support payments and affirm in part as to the remaining provisions on appeal.

Reversed in part; affirmed in part.

SULLIVAN, P. J., and MEJDA, J., concur.

---

[6] "The court finds that as a matter of law that the $100,000 life insurance policy should be maintained until the petitioner dies or remarries. It is crystal clear to the court that such a policy was intended as security to the petitioner. This policy was meant to provide maintenance and support to the petitioner and minor child in the event of the untimely death of the respondent. The argument advanced that such a policy should be for a limited period or terminated upon his death is expressly rejected. If the drafters of the agreement had intended such a result, the language used fails to provide such a construction. It is well established that even upon the death of a spouse required to provide maintenance, that such an obligation can be transferred to the estate."
The court then ordered:
"That Respondent reinstate or otherwise secure and maintain in full force and effect an insurance policy on his life in the face value of $100,000 naming Petitioner as sole beneficiary until Petitioner dies or remarries; * * *."