In re the Marriage of Beverly
QUAID, Petitioner, Respondent,

v.

John J. QUAID, Appellant.

No. C2–86–1874.

Court of Appeals of Minnesota.

April 14, 1987.

Review Denied June 30, 1987.

Glenn Bruder, Edina, for petitioner, respondent.

J. Christopher Cuneo, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

John Quaid appeals from the trial court's denial of his motion to reduce child support. Appellant claims the trial court erred in continuing his $1500 support obligation under circumstances where nearly $1400 of the monthly obligation would have to come from the liquidation of capital assets. We affirm the trial court's decision, but only for a limited period of time.

## FACTS

The marriage of the parties was dissolved by a New Jersey court in December 1984. The parties stipulated that respondent Beverly Quaid would have custody of the couple's two children, then ages 12 and 10, and that appellant would pay monthly child support of $1500. At the time of the dissolution, appellant was employed and earning $75,000 per year.

Appellant has a long history of alcoholism. In early 1985, his chemical dependency caused several disabling physical symptoms, including uncontrolled shaking of his arms and legs and the loss of his voice. As a result of these problems, appellant's employment was terminated in June 1985, and he moved to Minnesota. He has not been employed since that time.

In April 1986, respondent obtained legal representation in Minnesota and brought proceedings to obtain a money judgment on overdue child support. Appellant respond-ed with a motion to forgive arrearages and to decrease his child support obligation. The parties settled the arrearages issue outside of court and proceeded to an evidentiary hearing on appellant's modification motion.

The trial court found appellant has a present net monthly income of $1016, most of which is rental income from a recently inherited farm interest. Stock dividends produce the remaining income. The court found appellant's employment had been terminated after he and his employer "came to a 'mutual understanding' that his [chemical] dependency was creating problems in the workplace." The court found appellant has reasonable needs of $900 per month.

The court also found appellant owns stock valued at $70,000, which he purchased in 1985 with stock options awarded him as part of the property settlement in the dissolution. This stock provides appellant with his modest stock dividend income. The trial court findings indicate appellant also received $19,000 severance pay, but used the money to pay marital debts and moving expenses. The court made no other findings on any other capital resources of either party.

The trial court found respondent Beverly Quaid has net monthly income of $932. The court found respondent's current husband contributed $1157 for household expenses, but made no findings on respondent's separate needs or the total needs of the household. The trial court referee indicated the household expenses totaled $4404, but made no finding on whether those expenses are reasonable or necessary. The referee's finding would mean respondent and her husband have monthly expenses that are $2315 above the available income of both spouses.

The court found neither the original dissolution judgment nor the expense claims provided by the parties state the needs of the children, but that neither party contended the children's needs have changed since the dissolution. The court concluded that the reasonable needs of the two minor children "are met by" $1500 monthly pay-

ments, but made no separate finding as to the amount of the children's needs.

Based on these findings, the trial court declined to modify appellant's child support obligation. The court's order, dated September 24, 1986, reaffirmed an order of June 20, 1986, based on a referee's recommendation. The court did not clarify whether it had concluded that changes in circumstances were not substantial or that substantial changes did not render the original judgment unreasonable and unfair. The court expressly based its decision on a conclusion that appellant has a continuing ability to pay $1500 per month, derived either from his income or from his capital resources. Although his current earnings were only $116 more than his reasonable expenses, the court concluded his stock investment had to be "considered," and that based on this consideration alone, he had the financial ability to pay the child support awarded. Alternatively, the trial court stated it was "quite confident that [appellant] will be able to secure gainful employment in the near future." John Quaid appeals.

## ISSUES

1. Was it error to deny appellant's motion for a decrease in his child support obligation primarily because he retained some capital assets?

2. Was it error to deny the motion because of an expectation that appellant would soon be able to secure gainful employment?

## ANALYSIS

■ The decision to modify an award of child support is left to the broad discretion of the trial court. *Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986). An abuse of discretion exists only if the appellate court finds a " 'clearly erroneous conclusion that is against logic and the facts on record.' " *Id.* (quoting *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984)). However, the discretion must be exercised within the limits set out by the legislature. *Id.* The governing statute permits modification only if the court finds there has been a substantial

change in circumstances that makes the terms of the original order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (1986). Here, the trial court determined no such change in circumstances had occurred.

1. Appellant claims the trial court erred in unconditionally continuing his $1500 per month support obligation. The trial court found appellant had capital assets in the form of a $70,000 stock investment and that he must apply the asset to fulfill the support obligation. It made no other findings indicating the wealth or indebtedness of either party. Appellant argues against the unfairness of forcing him to liquidate the asset, in circumstances where each month nearly $1400 of the $1500 would have to come from that liquidation.

The application of capital assets to meet a support obligation involves conflicting principles of law. On one hand, support awards, like maintenance awards, are normally determined on the basis of income. *See* Minn.Stat. § 518.551, subd. 5 (1986) (child support guidelines are based on the obligor's net monthly income). *See also id.* § 518.54, subd. 3 (maintenance is an award "from the future income or earnings" of the payor spouse). Unlike its property decisions, which are final upon entry of the dissolution judgment, the trial court has continuing jurisdiction to modify a child support obligation based on changed circumstances. *See id.* § 518.64, subd. 2.

On the other hand, child support obligations are premised on the needs of the children. *Id.* § 518.551, subd. 5(a) (child support shall be set in an amount reasonable or necessary for the child's support). To meet those needs, the statute mandates consideration of parental "resources" as well as income. *Id.*, subd. 5(b)(1).

On several occasions, the Minnesota Supreme Court has upheld support obligations that required application of receipts from the liquidation of assets. *See, e.g., Tell v. Tell*, 383 N.W.2d 678, 686 (Minn. 1986) ("financial resources" include periodic payments received as a result of the distribution of marital property to a spouse pursuant to a dissolution decree); *Sieber v. Sieber*, 258 N.W.2d 754, 757 (Minn.1977)

(although obligor's employment had been sporadic since the sale of his business, it was appropriate to continue his $300 support obligation when he was receiving $1500 per month under an installment contract for the sale of the business and showed no change in his standard of living); *Peterson v. Peterson*, 304 Minn. 578, 579–80, 231 N.W.2d 85, 86–87 (1975) (trial court did not abuse its discretion in refusing to reduce obligor's $350 support obligation, despite obligor's assertion that most of $115,000 that he received in settlements of his pension fund, stock holdings, and personal injury claims had been disbursed for business, personal, and legal expenses). *See also* Minn.Stat. § 518.57, subd. 1 (1986) (as is just and proper for the support of the children, the trial court may order a lien or a charge upon the property of the parties).

■ It is evident that "resources" are a proper consideration, but this principle does not justify the trial court's conclusion that a support obligation is fully justified so long as some capital assets are available to meet it. Viewed properly, an obligor's capital assets are not the paramount consideration in determining a child support obligation, but are instead considered within the confines of established principles governing all support decisions.

Thus, it is evident that the total wealth of an obligor materially affects the question of whether capital assets should be used for child support. *See Sieber*, 258 N.W.2d at 757 (proper investment of proceeds from sale of $111,800 business "could certainly be a source of considerable future income"); *Bollenbach v. Bollenbach*, 285 Minn. 418, 429–30, 437–38, 175 N.W.2d 148, 156, 160 (1970) (where husband's net worth was approximately $3,000,000, wife's net worth was approximately $250,000, and trust funds for children amounted to nearly $1,000,000, the trial court should determine "what amount will be necessary for the support of the children, in light of the earning capacity of the gifts and trusts already established for their benefit," and the assets so designated should be placed in trust for their support); *Winter v. Win-*

*ter*, 375 N.W.2d 76, 80 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Dec. 30, 1985) (the inquiry as to the need for a modification of child support does not end with a finding that the children's needs are being met, but must consider both parents' financial resources and their relative contributions to the children's support).

So also, the need to apply capital is more evident when an obligor is not earning income to the extent of his ability. *Sieber*, 258 N.W.2d at 757 n. 2 (where "ex-husband voluntarily liquidates his business, a capital asset, and thereby diminishes his future earning capacity, * * * it would be unjust to hold that he is automatically relieved of future alimony payments, even if it ultimately becomes necessary to pay the ex-wife a portion of the proceeds from the sale"). *Fruen v. Fruen*, 228 Minn. 391, 399, 37 N.W.2d 417, 421 (1949) (where amount of prior support fell short of the actual amount needed by the children, and where obligor admitted he might have earnings in connection with his holdings in the company by which he was employed, it was an abuse of discretion to deny an increase in support). *See also LeTendre v. LeTendre*, 388 N.W.2d 412, 416 (Minn.Ct. App.1986) (trial courts "may properly consider earning capacity and earnings history to determine a party's ability to comply with a child support order"). More generally, it is established under Minnesota law that children should share in hardships suffered by their parents when parental difficulties are voluntarily encountered in good faith. *Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn.1982).

■ Here we are dealing with a $1500 support order, to be satisfied from income above reasonable expenses of only $116, and a single modest capital asset of a $70,-000 stock investment. The trial court did not find that appellant is earning less than he is presently able. So long as he has, in good faith, sought restoration of his health and management of his financial affairs, he is entitled to proceed without having to liquidate all of his capital investment. We conclude the trial court has erred in unconditionally requiring appellant to set aside

capital assets of nearly $1400 per month to honor his child support obligation.

We modify the decision of the trial court to provide that the obligation is continued at $1500 per month through March 31, 1987, and thereafter will be in force and effect only as determined by the trial court upon a rehearing and redetermination of the issue consistent with this opinion. So limited in time, the trial court's decision to apply capital assets was not an abuse of discretion.

If the trial court gives further attention to the use of capital assets to pay child support, other considerations require attention as well. It is error to perpetuate the use of appellant's capital assets without findings on the total assets of each party. Only with a full disclosure of that information can the trial court or an appellate court determine the equity in any further application of appellant's capital assets for child support.

In addition, the trial court should specifically readdress the issue of the children's needs and ascertain the present amount of those needs, making findings accordingly. The reasonableness of those needs should take into account the present financial circumstances of the parents.

2. The trial court did not find that appellant had a present ability to earn more than $1016 per month, but only that it was "quite confident" that he "will be able" to secure gainful employment "in the near future." The evidence does not permit a finding that a great improvement in appellant's earning ability is imminent. Rather, the evidence shows that appellant's chemical dependency and consequential physical infirmities continue to prevent his employment in a position comparable to the one he formerly held, and that he will need to complete treatment before he will be able to contribute to his family, friends, or employment.

In light of this evidence, we can only conclude the trial court was expressing confidence in a positive change in circumstances at an indefinite time in the future. Such a finding is distinct from a legitimate finding that a person is currently not earning up to their capacity. *See Resch v. Resch,* 381 N.W.2d 460, 462 (Minn.Ct.App. 1986) (it is proper to look beyond an obligor's earnings to his earning capacity, and to disregard any voluntary inability to pay). Here, the finding is not that there is a present capacity to earn more but that there will likely be such a capacity in the near future.

It is error to make an award based on expectations that are not controllable by the obligor. The trial court must base its support obligation on the obligor's present circumstances, including his present earning capacity. The law accommodates changes in those circumstances by permitting further review of the subject.

We note the trial court disregarded the referee's finding that modification was not justified singularly because of a voluntary quit of employment and the referee's conclusion that appellant's earning ability was unchanged. The referee's finding is not justified by the evidence; rather, the evidence is in accord with the trial court's findings that appellant lost his employment due to problems connected with his chemical dependency and based on the mutual will of him and his employer.

## DECISION

The trial court erred in wholly denying appellant's motion for a decreased support award because he has retained modest capital assets or because of an expected increase in appellant's income. The trial court's decision is upheld through March 31, 1987; the amount of appellant's subsequent obligation shall be determined by the trial court based on further consideration of the parties' circumstances and the children's demonstrated needs, consistent with the law and this opinion.

Affirmed as modified.