846

JORDAN FOSTER KNIGHT, a Minor, by Janet Lynn Keen, his Mother and Next Friend, Plaintiff-Appellant, v. LORELYN S. KNIGHT, Defendant-Appellee.

Second District No. 2—88—0430

Opinion filed February 23, 1989.

Vincent C. Argento and Patrick M. Loftus, both of Argento & Malcolm, of Elgin, for appellant.

Grant Eckhoff, of Richard W. Kuhn & Associates, of Naperville, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Jordan Foster Knight, a minor, by and through his mother and next friend, Janet Keen, brought this action seeking the imposition of a constructive trust upon life insurance proceeds paid on the life of Phillip Knight to defendant, Lorelyn Knight. The trial court entered judgment for defendant after a stipulated bench trial. We affirm.

Janet Keen, f/k/a Janet Knight, and Phillip Knight were married in Illinois in 1972. Plaintiff was the only child born of this marriage. In 1981, Phillip and Janet were divorced pursuant to a judgment entered in the superior court of Lake County, Indiana. At the time of their divorce, Philip and Janet entered into a property settlement and child custody agreement which was incorporated into their judgment for divorce. The settlement agreement provided, in pertinent part:

> "All life insurance policies presently in effect are to be changed and the parties' child, Jordan Foster Knight, is to be sole beneficiary."

The settlement agreement was executed on May 28, 1981. As of that date, Phillip had a $50,000 life insurance policy with Mutual of New York. That policy listed Janet as beneficiary.

On June 1, 1981, Phillip's employer instituted a group life insurance program for employees with State Mutual Life Assurance Company of America (State Mutual). Phillip enrolled in the program on June 5, 1981, and named plaintiff as his beneficiary.

On June 9, 1981, the court approved Phillip and Janet's settlement agreement and entered a judgment of dissolution. Phillip continued to maintain both the Mutual of New York policy naming Janet as

beneficiary and the State Mutual policy naming plaintiff as beneficiary. However, contrary to the terms of the settlement agreement, Phillip neglected to execute a change of beneficiary form and name plaintiff beneficiary of the Mutual of New York policy.

In February 1984, Phillip married defendant. In October 1984, he was diagnosed as having pancreatic cancer. On October 17, 1984, he executed a change of beneficiary form and named defendant beneficiary of the State Mutual policy. Plaintiff was made contingent beneficiary. No changes were made regarding Phillip's prior policy with Mutual of New York. Phillip died on December 31, 1984. The $41,000 proceeds of the State Mutual policy were paid to defendant and the $50,000 proceeds from the Mutual of New York policy were paid to Janet. Janet did not learn of the existence of the State Mutual policy and the distribution of those proceeds until February or March 1985. She subsequently brought this action on plaintiff's behalf for the establishment of an equitable trust and/or a relinquishment of the $41,000 insurance proceeds. The trial court entered judgment for defendant after a stipulated bench trial, and this appeal followed.

At issue in this appeal is whether, under the terms of the settlement agreement, Phillip could designate anyone but plaintiff as the beneficiary of the State Mutual policy.

The settlement agreement reads, in pertinent part:

"1. EFFECTIVE DATE. This Agreement shall become binding upon the wife and husband and their respective legal representatives, successors and assigns immediately following the granting of a Decree of Dissolution *** provided that the provisions of this Agreement are approved by the Court in which such [dissolution] proceeding is pending and is incorporated by the Court as part thereof in its Decree.
***

3. DIVISION OF PROPERTY. ***
* * *

F. All life insurance policies presently in effect are to be changed and the parties' child, Jordan Foster Knight, is to be sole beneficiary.

4. CONSTRUCTION AND EFFECT. This Agreement shall be submitted to the Court upon final hearing for dissolution of marriage in this proceeding, and if the dissolution shall be granted, and this Agreement approved and adopted as part of the Court's Decree, then it shall be binding upon the parties. Otherwise, this Agreement shall be void and of no force and effect. The parties further agree that the effective date of this

Agreement shall be the day and time of day in which a decree of dissolution shall be granted by the Court; provided, however, that as between the parties this Agreement shall be binding on the day of execution hereof, subject to the Court's approval, as heretofore mentioned. \*\*\*
\*\*\*

6. WAIVER OF FURTHER RIGHTS. Except as expressly provided, herein, each party shall be fully released by the other from any other obligation for alimony, support, maintenance or other obligations and each party accepts the provisions herein in full satisfaction of all property rights and all obligations for support or otherwise arising out of the marital relation of the parties. Each party, except with respect to payments or transfers of property occurring herein, hereby releases the other party and his or her respective legal representatives, successors and assigns from any claim of any kind and specifically relinquishes any right, title and interest in or to any earnings, accumulations, future investments, money or property of the other party."

The agreement was executed by Phillip and Janet on May 28, 1981, but it was not approved and entered as part of the divorce decree until June 9, 1981. Thus, plaintiff contends that, under the terms of the settlement agreement, the agreement was not binding until it was approved and entered as part of the divorce decree. Plaintiff therefore asserts that because the State Mutual policy was in effect as of the date the decree was entered, pursuant to paragraph 3F of the settlement agreement, Phillip was required to name and maintain plaintiff as the sole beneficiary of the State Mutual policy.

Defendant responds that since the State Mutual policy was not in effect as of the date the settlement agreement was executed, and because the possibility of such a policy was not contemplated by the parties, the settlement agreement cannot reasonably be read to affect that policy.

■ Initially we note that Phillip and Janet entered into the settlement agreement in question in Indiana, and it was approved and incorporated in a judgment of divorce entered by an Indiana court. The construction, operation, and effect of a foreign divorce decree are usually governed by the laws of the jurisdiction in which the decree was entered. (27C C.J.S. *Divorce* §803 (1986); see also *Vyskocil v. Vyskocil* (1981), 99 Ill. App. 3d 391, 394.) Therefore, Indiana law and rules of construction will be employed in interpreting the settlement agreement in question.

■ Under Indiana law, a property agreement incorporated into a court-approved final divorce decree is a binding contract. (*Duran v. Komyatte* (Ind. App. 1986), 490 N.E.2d 388, 392.) In construing the language of a separation agreement, the general rules governing the construction of all contracts are applied. (*Baugher v. Barrett* (1957), 128 Ind. App. 233, 239, 145 N.E.2d 297, 300.) The ultimate goal in the interpretation of a contractual provision is to give effect to the intent of the parties at the time they formed the contract. (*Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.* (Ind. App. 1984), 459 N.E.2d 420, 422.) In construing the terms of a contract, words are to be taken to be used in their ordinary, popular, and most obvious sense, absent a clear indication that a technical or special meaning was intended. *Nimet Industries, Inc. v. Joy Manufacturing Co.* (Ind. App. 1981), 419 N.E.2d 779, 781.

It is obvious that the parties in the instant action intended that plaintiff become the sole beneficiary of some insurance policy or policies. They chose to limit the effect of the insurance provision of the agreement to "policies presently in effect." It is clear that the contract was formed between the parties as of May 28, 1981. As of that date, the only policy "presently in effect" was Phillip's $50,000 Mutual of New York policy.

The complication arising here is that the parties also agreed that the terms of the agreement would become binding when approved by the court and incorporated into a final divorce decree. Plaintiff insists that the terms setting out the effective date of the agreement give definition to the term "presently in effect." Plaintiff's definition of that term is "in effect when the judgment is entered." We disagree.

■ When the parties formed their agreement, they did not know when the judgment would be entered. Although they may have had a court date set, that is not a guarantee that judgment will be entered on that date. At the time that the agreement was executed, the date of the entry of the decree was an unknown. The word "presently" cannot reasonably be interpreted to mean an unknown date in the future. It is meaningless if so interpreted. The only interpretation which gives real meaning and specificity to the term "presently in effect" is "in effect at the time the agreement was formed and executed," that is, May 28, 1981.

Furthermore, the agreement indicates that the policies presently in effect are to be *changed* to make Jordan the beneficiary. At the time the settlement agreement was executed, the State Mutual policy did not exist. The use of the word "changed" in the insurance provision indicates that something that already existed was to be modified.

That which does not exist cannot be changed. Because the State Mutual policy did not exist when the contract was formed, the provision instructing that the "policies presently in effect are to be changed" is meaningless when applied to it. The use of the word "changed" indicates that the provision applied only to policies known to exist in a certain form and not to future arising policies.

Plaintiff's position that the agreement was not binding until it was approved by the court is incorrect. This interpretation of the agreement ignores the provision in the "Construction And Effect" section that states "as between the parties this Agreement shall be binding on the day of execution hereof, subject to the court's approval." This provision cannot be ignored. We cannot treat any part of a contract as surplusage if it can be given a meaning reasonably consistent with other parts of the contract. (*Equitable Life Assurance Society v. Crowe* (1976), 170 Ind. App. 677, 688, 354 N.E.2d 772, 778.) Although the provision states that the agreement is subject to the court's approval, this does not mean that the agreement becomes binding on the date the court approves the agreement. Rather, we construe this clause to mean that if the court approves the agreement, it is binding on the parties *as of the day of execution*. The court did approve the agreement, and, therefore, the agreement was binding, as between the parties, as of May 28, 1981.

By the "Waiver Of Further Rights" provision in the agreement both parties released each other from all obligations and released all claims to any property of the other party, except as the agreement specifically provided. Because the waiver was effective as of May 28, 1981, Phillip had no obligation under the agreement to make Jordan the beneficiary of policies arising after May 28, 1981.

Accordingly, we hold that the settlement agreement was binding on the parties as of May 28, 1981, and that the insurance provision in the agreement refers only to policies in existence as of May 28, 1981. The only policy in effect as of that date was the Mutual of New York policy. Phillip was not obligated under the settlement agreement to maintain plaintiff as the beneficiary under the State Mutual policy which came into being after May 28, 1981.

As a final note, we feel compelled to address an argument raised by defendant which apparently formed the basis of the trial court's ruling. The evidence showed that Phillip had never changed the beneficiary on his Mutual of New York policy, as the settlement agreement required, and that on Phillip's death Janet received the $50,000 proceeds. The trial court made a point that Janet was before the court seeking equity and as such must demonstrate that she had

clean hands with respect to the $50,000. Defendant argues this point extensively, contending that Janet did not act equitably in taking the proceeds of the Mutual of New York policy and was therefore properly denied equitable relief.

This argument ignores the fact that Janet is before the court only as the next friend of Jordan, the party in interest and plaintiff in this cause. The duty of the next friend begins and ends with the prosecution of the lawsuit. (*Wojtas v. Rachel* (1932), 267 Ill. App. 148, 156.) The fact that there may have been some irregularity concerning the receipt of the proceeds of the Mutual of New York policy does not preclude an action on behalf of plaintiff to enforce his rights under the settlement agreement. A minor should not be precluded from enforcing his right unless clearly debarred from so doing by some statute or constitutional provision. (*Severs v. Country Mutual Insurance Co.* (1982), 89 Ill. 2d 515, 521.) Therefore, although we affirm the circuit court judgment in favor of defendant, the affirmance is not based on Janet's alleged failure to act equitably.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and DUNN, J., concur.