June Ann ABBOTT, Appellant,

v.

Lowell Dean ABBOTT, Respondent.

No. 49082.

Supreme Court of Minnesota.

Aug. 3, 1979.

---

Price, Tinney, Lindberg & Gianas, Tucson, Ariz., and Daniel P. Price, Moorhead, for appellant.

· Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger, and James D. Cahill, Moorhead, for respondent.

ROGOSHESKE, Justice.

This is an appeal by plaintiff June Abbott from an order of the district court granting defendant Lowell Abbott's petition for modification of the alimony provisions of the parties' judgment of divorce. The principal questions for determination are whether the trial court's finding of a substantial change in June's economic circumstances is clearly erroneous, whether the trial court erred in reducing and then terminating alimony, and whether the trial court erred in concluding that the existence of a meretricious relationship between plaintiff and another man is a sufficient ground, standing alone, to justify termination of her alimony. We conclude that the evidence does support a finding of substantial change in June's economic circumstances but that the trial court erred in determining the extent to which her need for support was diminished. We further conclude that participation in a meretricious relationship does not of itself justify reduction or termination of alimony. We therefore reverse and remand for a redetermination of the amount of the modification.

June and Lowell Abbott were married on February 17, 1958. It was June's third marriage, two previous marriages having ended in divorce. Lowell adopted June's son, Robert, issue of a prior marriage, but no child was born of their marriage. On May 4, 1967, June obtained a judgment of divorce which incorporated the terms of a negotiated stipulation concerning child custody, property settlement, support, and alimony. Lowell was to pay June $500 per month, $200 of which was to be considered support until Robert reached age 21. Subsequently, the entire $500 was to be paid as alimony, with payments to cease in the event of June's remarriage. June was also awarded the homestead subject to a $10,000 mortgage, a lake cottage, a mobile home, an automobile, and $10,000 in cash. Lowell retained his interest in a contracting firm and a boat. In 1971, Robert reached age 21. That same year June sold the lake cottage for $9,500. In 1976, she sold the homestead, realizing $35,000. Lowell has fully complied with the support and alimony provisions of the judgment of divorce.

Although June has not remarried, she begun dating Donald Bock, a childless widower, in 1973. They have been living together since June 1976, first at his home and currently in a basement house on 6 acres of land which they own as tenants in common, each with a one-half interest. The cost of the 6 acres was $43,000, $20,000 of which was contributed by June from the proceeds of the sale of her homestead. June and Bock both signed a mortgage note for the remaining $23,000, and they are jointly obligated on a loan of $7,000 to $8,000 for improvements to the property. No mortgage payments have yet come due. June and Bock have informally agreed that Bock will satisfy the outstanding obligations upon the sale of personally owned real estate currently listed at an asking price of $108,000. They have entered a written agreement permitting Bock to purchase June's interest in the property during her lifetime or after her death for the sum of $20,000, the amount of her contribution, plus interest. Bock has paid the taxes on the property and plans to build a house thereon with the proceeds of the sale of his other real property.

June, who has not been employed since her marriage to Lowell, does the shopping, cooking, laundry, and housecleaning, while Bock, in addition to teaching school, performs the traditionally male household tasks. They admittedly engage in sexual relations. Financially, their arrangement is that each pays a "fair share" of the household expenses. They maintain separate checking accounts, and on the rare occasions that June borrows money from Bock she repays it. June spends her $500 monthly alimony primarily on life insurance, groceries, laundry, clothing, and medical care. Bock earns $14,500 per year and similarly

pays his own expenses. He, however, has also paid the heating bills. June and Bock have made no significant purchases, have taken no trips together, and have exchanged no expensive gifts. They have discussed marriage but have decided against it for personal and financial reasons.

In July 1977, Lowell petitioned for modification of the alimony provisions of the judgment of divorce on the ground that June was living with and being substantially supported by Bock. In response, June petitioned for an increase in alimony. The parties waived an evidentiary hearing and agreed to submit the matter for the court's decision on affidavits, depositions, and written arguments. The trial judge found a clear showing of a substantial change in June's economic circumstances based on the emancipation of Robert and the fact that she no longer pays mortgage installments, real estate taxes, and the costs of heating and maintaining a home. He also concluded that June's meretricious relationship with Bock, regardless of its financial consequences, constituted a sufficient basis for terminating alimony. He accordingly reduced alimony to $150 per month for 6 months and terminated it thereafter.

The general rule is that a court will not exercise its discretion to modify a provision for alimony except upon a positive showing of a substantial change in the circumstances of the parties. *Ramsay v. Ramsay,* 305 Minn. 321, 233 N.W.2d 729 (1975). We therefore must determine whether the trial court's findings of substantial changes in June's economic circumstances are supported by substantial evidence in the record and whether the trial judge abused his discretion in ordering reduction and termination of alimony based on such changes. *Bissell v. Bissell,* 291 Minn. 348, 191 N.W.2d 425 (1971). The first change found by the trial court was the emancipation of Robert. The support and alimony provision of the

stipulation, entered by the parties at the time of their divorce and incorporated into the judgment, clearly contemplated the eventual independence of Robert. The monthly payment was set at $500, $200 of which was to be support until Robert reached age 21, the full amount to be alimony thereafter. Since Robert's emancipation was specifically planned for at the time of the stipulation and judgment, it cannot serve as the basis for a finding of a substantial change in circumstances and the decision to reduce and terminate alimony, insofar as it relied on that factor, constitutes error.

The second change found by the trial court was the improvement of June's financial circumstances by reason of the economies in housing expenses gained by her living arrangement with Bock. In *Sieber v. Sieber,* 258 N.W.2d 754, 758 (Minn.1977), we endorsed the rule that a meretricious relationship between a divorced spouse and another may be grounds for reducing or terminating alimony "in so far as it might improve an ex-spouse's economic well-being." The trial court specifically found that June was no longer obligated to make mortgage payments or to pay real estate taxes, heating bills, and other items necessary to the upkeep of a home. The record supports a finding that Bock paid the real estate taxes and heating costs and that he performed home maintenance services for which June normally would have had to contract. The finding, however, that Bock contributed $31,000 to the purchase price of the property (upon which the finding that June is freed from mortgage obligations is apparently based) is clearly erroneous. Bock has not yet contributed to the purchase price of the real estate, and the fact that the terms of the mortgage do not require present payment does not relieve June of liability for the debt. However, June has invested $20,000 in the property,[1]

---

1. On appeal, Lowell emphasizes that Bock's intention to contribute greater than half of the purchase price of property in which June owns a one-half interest constitutes an enhancement of her economic position. This contention is speculative, since Bock has not yet made such

payments. Moreover, the agreement between Bock and June permits Bock to purchase June's interest, should she desire to sell or upon her death, for the amount of her contribution plus interest. Although the agreement is unclear, it may also allow him to force June to convey her

the foregone interest on which should be viewed as a contribution to housing expenses.

In our view, the record overall supports a finding of a substantial change in June's financial circumstances but lacks specific proof of the extent of that change. It contains neither an itemized statement of her living expenses prior to cohabitation with Bock nor a summary of the expenses she presently is incurring, data critical to a reasoned comparison. Contrary to the trial court's finding, our review of the record discloses no admission by June that her living expenses have been substantially reduced. Moreover, an additional factor relied upon by the trial court, the execution of wills by June and Bock in favor of one another, is entirely too speculative to constitute a change in June's financial circumstances. The trial court's finding that June has executed a will favoring Bock is in error as no evidence supports it, and, although Bock's will names June as beneficiary, it is ambulatory and confers no present rights. We therefore conclude that the finding of a substantial change in June's economic circumstances was not clearly erroneous but that the trial court, because of unsupported factual findings and a failure to properly apply our holding in the *Sieber* case, erred in computing the amount of the modification. We express no opinion whether a reduction or termination of alimony would be warranted upon a more precise showing, which the parties on remand will be afforded an opportunity to present.

▌▌ We also are not persuaded, despite the urging of the trial court, to overrule our decision in *Sieber v. Sieber, supra.* In that case we declined to hold that the existence of a meretricious relationship, standing alone, is a sufficient ground to justify termination of alimony. While older decisions of this court have held that a former spouse's sexual misconduct can be a factor in determining whether to modify an alimony provision, none of them have held that postdivorce misconduct is sufficient per se to justify a modification. See, *Martens v. Martens,* 211 Minn. 369, 1 N.W.2d 356 (1941); *Wilhelm v. Wilhelm,* 201 Minn. 462, 276 N.W. 804 (1937); *Lindbloom v. Lindbloom,* 180 Minn. 33, 230 N.W. 117 (1930). In the usual case, alimony is a substitute for the husband's common-law obligation to support his wife. *Loth v. Loth,* 227 Minn. 387, 400, 35 N.W.2d 542, 550, 6 A.L.R.2d 176, 186 (1949). A former wife, however, owes her former husband no particular obligation; her sexual activities are not legally adulterous and her former husband has no legal standing to challenge conduct socially disapproved on moral grounds. See, Clark, Domestic Relations, § 14.9(6).[2] It is in the public interest that alimony be paid, since without such a postdivorce provision for support, there is substantial likelihood that a divorced spouse will become a public charge. Here the stipulation of the parties and the judgment of divorce provided for termination of alimony solely upon June's remarriage. At the time of the judgment of divorce, remarriage did not ipso facto cancel the support obligation, but it was considered strong evidence of changed circumstances justifying termination of alimony. *Hartigan v. Hartigan,* 142 Minn. 274, 171 N.W. 925 (1919). In 1978, the legislature enacted Minn.St. 518.64, subd. 3, which terminates alimony upon remarriage as a matter of law unless an agreement or judgment provides otherwise. Other state legislatures have specifically provided that participation in a meretricious relationship is a

interest to him at that price. June receives no reciprocal rights under the agreement. Thus, the circumstances under which June would profit from the joint ownership of the property are in essence dependent upon the will of Bock.

2. Minn.St. 518.552 and 518.58 eliminate marital misconduct as a consideration in determining maintenance awards and property dispositions. The arguments for eliminating postmarital misconduct as a factor bearing upon modification

ground for termination of alimony.[3] In the absence of a governing statute, and bearing in mind the above principles, we believe that only if it could be said that June has remarried would the record support the legal conclusion that alimony must be terminated.

The relationship between June and Bock is clearly not a marriage sanctioned by the laws of this state. De facto or common-law marriages were specifically abolished by the legislature in 1941. Minn.St. 517.01. Unless a license is obtained and proper solemnization observed, no legally cognizable marriage with its attendant obligations can be contracted.[4] *Baker v. Baker,* 222 Minn. 169, 23 N.W.2d 582 (1946). To impose support obligations on parties to nonmarital relationships would be to contravene the legislative prohibition of common-law marriage. Any change in the definition of marriage or attachment of marital obligations to specified nonmarital relationships clearly involve issues to be resolved by the legislature, not the judiciary. Since a man cohabiting with another's for-

mer wife incurs no support obligation, it cannot be said that the former husband's obligation is extinguished. See, *Bowman v. Bowman,* 163 Neb. 336, 79 N.W.2d 554 (1956). Moreover, because there is no legal tie between the parties engaged in a meretricious relationship, the arrangement can be readily broken off without obligation.[5] Likelihood that a former spouse will be required to resort to public assistance is thereby increased.[6] We conclude that the existence of a meretricious relationship does not constitute, simply by reason of the nature of the relationship, sufficient ground for the termination of alimony. Where, however, a former spouse's need for support is reduced through such a relationship, modification is appropriate. We affirm our earlier adoption of the rule that a meretricious relationship may be a basis for reducing or terminating alimony to the extent it improves a former spouse's economic well-being.

We believe that June's claim that the trial court abused its discretion by fail-

are even stronger since the marital unit sought to be socially preserved has already been broken.

3. Since 1934, New York has had a statute permitting courts to terminate alimony upon proof that a former wife is habitually living with another man and holding herself out as his wife, although not married to such man. N.Y. Dom.Rel.Law, § 248 (McKinney 1977). California adopted a similar statute in 1974. 1974 Cal.St., c. 1338, § 1. The "holding out" requirement has made circumvention of these statutes relatively easy. *Owyang v. Owyang,* 4 Fam.L. Rptr. 2316; *Northrup v. Northrup,* 43 N.Y.2d 566, 402 N.Y.S.2d 997, 373 N.E.2d 1221 (1978). In 1976, California substantially changed its statute to provide for a rebuttable presumption of decreased need for support when the supported party is cohabiting with a member of the opposite sex. Cal.Civ.Code, § 4801.5(a). This provision eliminates the moral issue and confines inquiry to financial matters in keeping with the modern trend toward no-fault divorce and property distribution.

4. Minn.St. 518.055 specifically confers the rights of a legal spouse, including the right to maintenance, on a putative spouse (one who cohabits with the good faith belief that he or she is married). No such exception is made for

those who cohabit knowingly without the benefit of marriage.

5. In *Carlson v. Olson,* 256 N.W.2d 249 (Minn. 1977), we held that where a man and woman had lived together for 21 years, holding themselves out as husband and wife, the trial court was justified in dividing the parties' property equally on the theory of an irrevocable gift from one to the other of those assets purchased with their separate earnings. The decision does not purport to impose the marital obligation of support on either party. Moreover, it deals with the rights of the partners to the relationship, not with the impact of the relationship on the rights of third persons. If June were to bring a partition action against Bock on the theory of the Carlson case and succeed, her alimony from Lowell could properly be reduced to the extent her economic situation was improved by the property received.

6. The result is different in jurisdictions recognizing common-law marriage. Such a marriage, if proved, terminates the obligation to pay alimony for the reason that in a common-law marriage there is a manifestation that the relationship is permanent and that each party assumes the obligations of marriage, including the obligation of support. The former husband's obligation is thus supplanted by that of the common-law husband.

ing to grant her petition for an increase in alimony is without merit. A favorable change in the divorced husband's financial circumstances without a proved change in the financial needs of the divorced wife is not sufficient to justify a change in alimony. *Kaiser v. Kaiser,* 290 Minn. 173, 186 N.W.2d 678 (1971).

Reversed and remanded for redetermination of the amount of the modification.

OTIS, J., took no part in the consideration or decision of this case.