**In re the Marriage of Cathie A. AAKER, Petitioner, Appellant,**

v.

**Douglas T. AAKER, Respondent.**

**No. CX–89–339.**

Court of Appeals of Minnesota.

Nov. 14, 1989.

Review Denied Jan. 12, 1990.

Edward L. Winer, Susan C. Rhode, Moss & Barnett, Minneapolis, for petitioner, appellant.

A. Larry Katz, Brian L. Sobol, Katz, Davis, Manka & Haugan,** Minneapolis, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and RANDALL and LESLIE,* JJ.

## OPINION

DAVID R. LESLIE, Judge.

Cathie Aaker appeals from an amended judgment and decree entered January 27, 1989, determining property, spousal maintenance and child support issues in a dissolution proceeding. Cathie disputes the trial court's determinations, claiming that the trial court (1) erroneously provided that spousal maintenance payments would terminate upon Cathie's cohabitation for more than six months when it was reasonable to conclude that her basic needs were being provided for; (2) abused its discretion in its award of temporary spousal maintenance; and (3) abused its discretion in its award of child support. Douglas Aaker filed a Notice of Review challenging the amended judgment as to spousal maintenance and child support. We affirm the trial court's decision.

## FACTS

Cathie and Douglas Aaker were married on June 24, 1972. At the time of trial, Cathie was 39 years of age. The parties have three minor children. The parties separated in September 1985 and Cathie commenced this action in August 1986.

Douglas is an orthodontist and the sole owner of Douglas T. Aaker, D.D.S., P.A. He has conducted his orthodontic practice in the St. Cloud area for 13 years. Douglas has a fully-equipped office with a full staff. From 1982 to 1987, respondent's salary range was the following:

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

** The firm of Katz, Davis, Manka & Haugan did not appear as trial counsel and did not substitute as counsel for respondent until this appeal was commenced.

| | |
|------|----------|
| 1982 | $117,000 |
| 1983 | $117,000 |
| 1984 | $145,000 |
| 1985 | $139,000 |
| 1986 | $103,000 |
| 1987 | $123,000 |

There was evidence at trial that Douglas' practice and income were declining due to his emotional state and his failure to promote his practice.

Cathie received a bachelor's degree in art education in 1973. Following her graduation from college she worked for Northwestern Bell as a service representative from April 1973 through April 1975. Thereafter, Cathie was employed on a limited, part-time basis in various capacities in Douglas' orthodontic practice, including that of a bookkeeper, receptionist, and dental assistant until 1985. In addition, Cathie was active in the promotion of Douglas' orthodontic practice and acted as an office · administrator, helping to develop policies and working with his staff and staff problems. During their marriage, Cathie was active as a homemaker and, after the birth of the parties' children, as a mother. At the time of trial, Cathie was not employed outside the home.

On November 2, 1987, the parties entered into a stipulation providing that they share joint legal and physical custody of their minor children. Based on this stipulation, the trial court ordered that the parties shall have joint legal and physical custody of their minor children. The order was incorporated into the original findings and conclusions of the court.

## ISSUES

1. Are the issues raised by respondent's Notice of Review properly before this court?

2. Did the trial court err in its award of spousal maintenance as to either duration or amount?

3. Did the trial court err in its award of child support?

4. Is Cathie entitled to attorney fees?

## ANALYSIS

█ 1. Cathie argues that because the issues Douglas raised in his Notice of Review were not included in the amended judgment, he is precluded from obtaining review of those issues. Douglas, however, has chosen only to brief issues raised by the amended judgment. Therefore, this court may properly review the issues Douglas raises in his brief regarding the level of spousal maintenance and child support. *See Burwell v. Burwell,* 433 N.W.2d 155, 156 (Minn.Ct.App.1988).

█ 2. Both parties argue that the trial court erred in its award of spousal maintenance as to both duration and amount. The trial court has broad discretion in determining the duration and amount of maintenance. *Zamora v. Zamora,* 435 N.W.2d 609, 611 (Minn.Ct.App.1989). The trial court abuses its discretion when it comes to a clearly erroneous conclusion that is against the logic and the facts on the record. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). The trial court's decision must be examined in light of the factors enumerated in Minn.Stat. § 518.552 (1988). *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982).

█ The trial court amended the judgment and decree to allow for the termination of respondent's spousal maintenance obligation if appellant

> [cohabits] for more than six months * * * under such circumstances that it is reasonable to conclude that [her] basic needs are being provided by such other person.

Cathie contends that this amendment gives Douglas the discretion to arbitrarily terminate his maintenance obligation to Cathie without seeking prior approval by the trial court if he believes in good faith that her needs are otherwise provided for. Douglas argues that he can terminate spousal maintenance upon evidence of cohabitation, but acknowledges that if Cathie moves the trial court to have maintenance continued, the burden shifts back to him to prove that cohabitation exists and that it is of economic significance to Cathie. While we share some of the concern expressed in the dis-

sent on this issue, we emphasize that the parties have not challenged or briefed the legality of this amendment, so we address only the interpretation and trust that the interpretation will be helpful and not perceived as "worse than worthless" as concluded by the dissent.

We disagree with both parties' interpretations of the trial court's cohabitation provision. To avoid remanding and visiting additional expenses on the parties, we hold that the appropriate and reasonable interpretation of the amended provision is that even if Douglas has reason to believe that Cathie has cohabited for more than six months with any adult person where it is reasonable for him to conclude that her basic needs are being provided to her by such adult person, Douglas cannot terminate spousal maintenance on his own. Instead, Douglas must move the court pursuant to Minn.Stat. § 518.64, subd. 1. As part of the petition to the trial court for modification or termination of his maintenance obligation, Douglas would have to show a "substantially increased or decreased need" on the part of Cathie pursuant to Minn.Stat. § 518.64, subd. 2(2). Then, only upon a trial court's order modifying or terminating maintenance could Douglas modify or terminate his spousal maintenance payments to Cathie. *See Abbott v. Abbott*, 282 N.W.2d 561, 564–65 (Minn.1979); *Sieber v. Sieber*, 258 N.W.2d 754, 758 (Minn.1977).

■ Minn.Stat. § 518.552, subd. 3 (1988) requires that a trial court order permanent maintenance if the court is uncertain that the spouse seeking maintenance can ever become self-supporting. *See Nardini v. Nardini*, 414 N.W.2d 184, 198 (Minn.1987). This is particularly true when the spouse seeking maintenance is an older, dependent spouse who has had a lengthy "traditional" marriage. *McClelland v. McClelland*, 359 N.W.2d 7, 10 (Minn.1984). The order for an award of permanent maintenance can be left open for later modification. *Nardini*, 414 N.W.2d at 198.

■ In applying the statutory criteria of Minn.Stat. § 518.552, subd. 2 to the present case, the trial court properly awarded Cathie temporary rehabilitative spousal maintenance. At trial, appellant was only 39 years old and was in good physical and emotional health. She possessed one bachelor's degree and the evidence at trial was clear that she could complete a bachelor's degree in business within the next three years. The evidence showed that upon obtaining her degree she will have an excellent prospect of obtaining an entry-level salary of approximately $20,000 in the spring or summer of 1991. There was further evidence that Cathie's salary thereafter is likely to increase and, by conservative estimates, should reach the level of $30,000 within six to seven years of starting her employment. Further, Cathie received a substantial award of liquid assets. Finally, the evidence at trial regarding Douglas' current level of income supports the trial court's findings that the parties' standard of living will be reduced. Because there is sufficient evidence to support the trial court's award of temporary maintenance, we affirm the trial court on this issue.

■ Douglas argues that the trial court abused its discretion in increasing the amount of spousal maintenance awarded to Cathie in its amended findings in light of his earning capacity at the time of trial. The evidence presented at trial, however, tends to support the trial court's finding. Psychologists retained by both parties testified that Douglas' emotional state would improve once the dissolution was final. Further, the evidence showed that his average annual salary over the past six years was $125,000. Therefore, the trial court's finding that Douglas would continue to earn an income at least approximately this average was not clearly erroneous and is affirmed.

3. Cathie next argues that the trial court erred in (1) terminating child support payments prior to the children's emancipation, and (2) reducing the remaining obligation inconsistent with the child support guidelines. Douglas contends that the trial court abused its discretion in deviating upward from the child support guidelines.

The trial court's discretion regarding child support obligations is broad, and the trial court will only be reversed for a clear abuse of discretion. *See DuBois v. DuBois,* 335 N.W.2d 503, 507 (Minn.1983). If the trial court's determination has a reasonable and acceptable basis in fact and principle, this court "will and must affirm" the trial court. *Id.* Child support awards must be supported by clear findings which show that the trial court has considered the factors under Minn.Stat. § 518.551. *Moylan v. Moylan,* 384 N.W.2d 859, 863 (Minn. 1986).

In its amended judgment and decree, the trial court stated that Douglas' obligation of child support will be reduced on December 31 of the year the child turns 18. The trial court further provides that Cathie may apply to the court for child support above the amount then mandated by the provision if (a) any child of the parties is still attending high school beyond their 18th birthday; and (b) is living with Cathie. Unless any of the parties' children is held back in school, each of them will reach 18 just before or early in his/her senior year in high school. Thus, each of them should complete the senior year while he or she is 18 years of age. From January 15 through the end of the school year, according to the custody schedule contained in the decree, Douglas will have physical custody of the children. Because Douglas will have custody, it seems inappropriate to award any child support to Cathie for the time between December 31 of the year the child turns 18 and the time he or she graduates from high school, presuming that they are not held back. In case any of the children is held back, the trial court provided that Cathie may seek an extension of child support. Therefore, the trial court's finding appears to have a reasonable basis in fact and should be affirmed.

Both parties contend that the trial court erred in its award of child support. Under the guidelines, Douglas' child support obligation for three minor children would be $1,400 per month. The trial court awarded appellant $1,400 per month in child support during her six-month physical custody of the children. The trial court further awarded Cathie $700 a month in child support during the children's six-month physical custody by Douglas. Because the trial court's award of child support is consistent with the guidelines and is not clearly erroneous, the trial court is affirmed on this issue.

4. Cathie argues that she is entitled to an award of attorney fees because she has been the victim of "economic warfare" such as was found by this court in *Roehrdanz v. Roehrdanz,* 438 N.W.2d 687, 691 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. June 21, 1989). Under Minn. Stat. § 549.21, subd. 2 (1988), this court may award reasonable attorney fees when a party acts in bad faith by asserting claims or defenses known to be frivolous or asserting an unfounded position solely to harass or to delay proceedings. Douglas' actions in this litigation do not appear to rise to a level so "specious as to force the conclusion that so unfounded a position could be advanced *only* to harass." *Roehrdanz,* 438 N.W.2d at 691. Therefore, it does not appear that Cathie is entitled to an award of attorney fees in this case.

We are very troubled, however, by the record in this case which reflects that a large part of the liquid assets of the parties will be paid in attorney fees, expert witness fees, and costs. The attorneys in oral argument before this court acknowledged that the total amount of attorney fees and costs for both parties exceed $200,000. We are not in a position as an appellate court to determine responsibility for this outrageous depletion of the liquid assets. Clearly this works to the detriment of both parties. Fault may lie with counsel or, not unlikely, the intransigence of the parties themselves. Perhaps the system itself is at fault. We do think it is a telling commentary on that system that the parties' lifetime accumulation has become substantially depleted merely to dissolve the marriage.

## DECISION

The trial court's determination as to the duration and amount of spousal mainte-

nance is affirmed. The trial court's determination as to child support is also affirmed.

Affirmed.

HUSPENI, Judge (concurring in part, dissenting in part).

I concur with the majority on the issues of the amount and duration of spousal maintenance, the amount of child support, and attorney fees. However, I respectfully dissent from the majority's retention of any cohabitation clause language and from its affirmance of the child support termination date.

The cohabitation clause has been "interpreted" by the majority to permit respondent to seek a court order modifying or terminating maintenance if he has reason to believe that appellant has cohabited with an adult who is providing her basic needs. While this "interpretation" prevents an arbitrary cessation of maintenance payments and abrogates much of the force of the cohabitation provision, I submit that the inclusion of any reference to cohabitation is inappropriate in a court ordered decree.[1] This court in *Bateman v. Bateman*, 382 N.W.2d 240, 251 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. April 24, 1986) recognized the inappropriateness of including a cohabitation provision. *See also Sieber v. Sieber*, 258 N.W.2d 754, 757 (Minn.1977) ("We are not persuaded that the existence of a meretricious relationship * * * standing alone is a sufficient ground to justify termination of * * * alimony"). The attempt here to tie the cessation of maintenance to its potential economic consequences does not, I submit, remedy the basic mischief of including a cohabitation clause in the first place. If, in fact, appellant does cohabitate in the future and if that cohabitation is perceived by respondent to be economically beneficial to appellant, Minn.Stat. § 518.64 is a fully utilizable vehicle through which respondent may bring a motion for reduction or termination

of maintenance. The emasculated version of the cohabitation clause "interpreted" by the majority today is worse than worthless; it is subject to a misuse that can be needlessly economically and emotionally costly to both parties in the future.

In regard to child support, a decree provision terminating that support on December 31 of the year a child turns 18 is contrary to the definition of "child" in the Marriage Dissolution Act:

"Child" means an individual under 18 years of age, an individual under age 20 who is still attending secondary school, or an individual who, by reason of physical or mental condition, is incapable of self-support.

Minn.Stat. § 518.54, subd. 2 (1988). If the children continue to live with respondent from January 15 to July 15 of each year, arguably their support through the first half of the year following the year they turn 18 should be assured. However, the custody arrangement may be modified formally or informally by the parties. Even assuming the custody arrangement remains as it is at present, the $700 per month year-round support paid by respondent to appellant is set in consideration of the $1,400 per month expenses anticipated by appellant for the six months each year the children are actually with her. It is very possible that the minor children could incur expenses in excess of $700 per month while with appellant for which she would be responsible even after the children have left her physical custody. Again, the trial court's arbitrary termination of support prior to the statutorily mandated termination event is inappropriate and potentially divisive.

---

1. I recognize that at times parties stipulate to the inclusion of such a provision and that stipulation is incorporated into a decree. While such incorporation may not be inappropriate, it may create post-decree evidentiary and proof problems.