**In re the Marriage of Richard T. AUER, Petitioner, Respondent,**

v.

**Barbara Anne SCOTT, Appellant.**

**No. CX–92–1324.**

Court of Appeals of Minnesota.

Dec. 22, 1992.

Daniel J. Goldberg, Moss & Barnett, P.A., Minneapolis, for respondent.

William M. Dickel, Brandell & Dickel, Eden Prairie, for appellant.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

The stipulated dissolution decree of appellant Barbara Anne Scott and respondent Richard T. Auer provided for terminating Auer's maintenance obligation if Scott cohabited with a male person. Auer ceased maintenance, alleging Scott triggered the cohabitation clause by cohabiting with a male person. Scott disagreed, arguing she derived no economic benefit even if she were in violation of the cohabitation clause. The trial court terminated Auer's maintenance obligation. Scott now maintains the termination was inappropriate because she did not receive the economic benefit she maintains the cohabitation clause requires.

## FACTS

The parties' stipulated marital termination agreement awarded Scott maintenance which would terminate if she "cohabited" with an unrelated male person. As most of the agreement's pages have handwritten deletions or alterations of the typed provisions, it was apparently negotiated up to and including the day it was signed. Paragraph seven addressed maintenance and included the cohabitation clause as a typed provision. The cohabitation clause was not altered by hand, but other aspects of paragraph seven were. Both parties signed the page containing paragraph seven.

The parties' decree incorporated the agreement. After one month, Auer ceased maintenance alleging Scott had triggered the cohabitation clause by living with William M. Dickel.

The propriety of the maintenance termination was submitted to the same trial judge who originally received the stipulation and issued the decree. The evidence indicated Dickel was paying rent at a friend's house for use of a bedroom. It also indicated Dickel had "moved in" with Scott before Auer was liable for maintenance, and that Dickel's car, driver's license, voter's registration, and a credit card all used Scott's address. He also used Scott's address on a loan application.

Scott alleged she did not economically benefit from these circumstances. Auer did not strongly dispute this allegation. Scott alleged the cohabitation clause required her to derive economic benefit from living with someone before maintenance could be terminated. Auer, however, argued that sharing a residence triggered the clause.

In its order, the trial court found Dickel spent only one night a week at the address where he pays rent but that Scott had not economically benefitted from Dickel's presence at her residence. The trial court also specifically found that while Auer was aware Scott was involved with Dickel during the stipulation's negotiation, he was unaware of Dickel's use of Scott's address in official capacities. The trial court then terminated Auer's maintenance obligation, concluding that Dickel "cohabited" with Scott. The trial court also required Scott to repay Auer for the one month's maintenance already paid.

Scott and Dickel are now married. Thus, this appeal involves Auer's maintenance obligation for the period between the decree's issuance and the marriage. *See* Minn.Stat.

§ 518.64, subd. 3 (Supp.1991) (remarriage terminates maintenance).

## ISSUE

Did the trial court erroneously terminate Auer's maintenance obligation?

## ANALYSIS

Here, the parties' stipulated decree states Auer's maintenance obligation would terminate should Scott "cohabit with a male person not related within the first degree of consanguinity" but does not further define "cohabit" or "cohabitation."

### 1. *Termination of Maintenance on "Moral Grounds"*

Scott argues the trial court improperly terminated maintenance on "moral grounds." This argument misreads the trial court's order. Seeing the issue as the "definition of 'cohabit' and the parties' intention in negotiating" the agreement, the trial court observed that, if a cohabitation clause is court ordered, maintenance modification must be pursuant to Minn.Stat. § 518.64. The trial court then reasoned that, because the instant cohabitation clause was stipulated, the parties' stipulation "would serve no purpose" if the analysis for court-ordered cohabitation clauses was applied here.

Therefore, the trial court concluded that Scott's cohabitation with Dickel was sufficient to terminate Auer's maintenance obligation. Termination of Auer's maintenance obligation was based on the stipulation rather than "morality," and Scott's argument to the contrary is without merit.

### 2. *Dual Standard*

■ The supreme court has stated that the existence of a meretricious relationship does not constitute, simply by reason of the nature of the relationship, sufficient ground for the termination of alimony. Where, however, a former spouse's need for support is reduced through such a relationship, modification is appropriate.

*Abbott v. Abbott,* 282 N.W.2d 561, 566 (Minn.1979). Cohabitation clauses are functionally read as allowing maintenance modification upon a substantial change in circumstances under Minn.Stat. § 518.64 subd. 2. *See, e.g., Aaker v. Aaker,* 447 N.W.2d 607 (Minn.App.1989), *pet. for rev. denied* (Minn. Jan. 12, 1990).

The trial court's conclusion that the quoted portion of *Abbott* was inapplicable to the instant stipulated cohabitation clause created two definitions for "cohabit" depending upon whether the source of a cohabitation clause is a stipulation or a court order. As a result, the trial court also implicitly created separate thresholds for triggering a clause depending on its source: "substantial change" for court-ordered cohabitation clauses and "shared residence" for the instant stipulated clause which does not otherwise define cohabit. Scott functionally challenges this dual standard.

Scott's allegation that the trial court failed to explain the inapplicability of the *Abbott* analysis is addressed by the trial court's statement that the parties' cohabitation provision "would serve no purpose" if given an economic interpretation under *Abbott.* When examining stipulations:

> A reviewing court is obliged to attempt to interpret the actual words used by the parties, and there is a presumption they meant what they said.

*Vanderleest v. Vanderleest,* 352 N.W.2d 54, 57 (Minn.App.1984); *see also Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 526 (Minn.1990) (when interpreting contracts, courts presume parties intend language used to have effect and "will attempt to avoid an interpretation of the contract that would render a provision meaningless").

■ *Abbott* and Minn.Stat. § 518.64, subd. 2 were part of Minnesota's case and statutory law at the time of the parties' stipulation. Therefore, if the court imposed a cohabitation clause, or one was not in the decree, maintenance modification would have required a substantial change in circumstances. Here, however, the parties stipulated to a cohabitation clause. Because court ordered cohabitation clauses

are interpreted as requiring the same modification threshold as if there were no cohabitation clause, to interpret a stipulated cohabitation clause as having the meaning normally given a court-imposed cohabitation clause would functionally mean the parties stipulated to application of the law which would have been applied if there had been no stipulation. Such an interpretation would render the stipulation meaningless. Therefore, the trial court concluded the clause must have had a non-*Abbott* meaning.

The trial court's inference is not inconsistent with case law. In *Abbott*, the supreme court stated the policy reasons for concluding that meretricious relationships, standing alone, are insufficient to terminate alimony:

> In the usual case, alimony is a substitute for the husband's common-law obligation to support his wife. A former wife, however, owes her former husband no particular obligation; her sexual activities are not legally adulterous and her former husband has no legal standing to challenge conduct socially disapproved of on moral grounds. [Also,] [i]t is in the public interest that alimony be paid, since without such a post-divorce provision for support, there is a likelihood that a divorced spouse will become a public charge.

*Id.* at 563. The supreme court then examined these concerns relative to the maintenance stipulation in *Abbott:*

> Here, the *stipulation of the parties* and the judgment of divorce provided for termination of alimony solely upon [the obligee's] remarriage. At the time of the judgment of divorce, *remarriage did not ipso facto cancel the support obligation,* but it was considered strong evidence of changed circumstances justifying termination of alimony. [Subsequently,] the legislature enacted Minn. Stat. § 518.64, subd. 3, which terminates alimony upon remarriage as a matter of law unless an agreement or judgment provides otherwise. * * * In the absence of a governing statute, and bearing in mind the above principles, we believe that *only if it could be said [the*

*obligee] has remarried would the record support the legal conclusion that alimony must be terminated.*

*Id.* at 565–66 (emphasis added). In *Abbott,* the parties stipulated to termination of maintenance upon the obligee's remarriage, a condition which would not have otherwise terminated maintenance. The supreme court did not disapprove of this aspect of the stipulation. Thus, *Abbott* does not forbid stipulations which allow maintenance termination in circumstances other than those which would allow termination under a court-imposed cohabitation clause.

More directly, in *Aaker,* the trial court issued a decree which terminated maintenance upon the obligee's cohabitation. *Id.* at 610. The majority opinion in *Aaker* made satisfaction of Minn.Stat. § 518.64, subd. 2 a prerequisite to maintenance reduction. *Aaker,* 447 N.W.2d at 611. The dissent, however, cited *Bateman v. Bateman,* 382 N.W.2d 240, 251 (Minn.App. 1986), *pet. for rev. denied* (Minn. April 24, 1986), where this court removed a court ordered cohabitation clause. *Aaker,* 447 N.W.2d at 613 (Huspeni, J., concurring in part, dissenting in part). The dissent then stated that "the inclusion of any reference to cohabitation is inappropriate *in a court ordered decree." Id.* at 613 (emphasis added). The accompanying footnote, however, states:

> I recognize that *at times parties stipulate to the inclusion of such a provision and that the stipulation is incorporated into the decree.* While *such incorporation may not be inappropriate,* it may create post-decree evidentiary and proof problems.

*Id.* at 613 n. 1 (emphasis added).

Thus, even the *Aaker* dissent, which suggests all court-ordered cohabitation clauses are inappropriate, allows disparate treatment of stipulated and court-ordered cohabitation clauses. Therefore, we cannot say the trial court erred in distinguishing between court-ordered cohabitation clauses and the instant, stipulated cohabitation clause.

### 3. *Lack of Findings*

■ Scott argues the trial court did not explicitly find the parties intended the term "cohabit" not to have an economic connotation. The appealed order is from the same trial judge who originally had the case, accepted the stipulation, and issued the decree. Generally, a trial court's construction of its own decree is accorded great weight on appeal. *Palmi v. Palmi,* 273 Minn. 97, 104, 140 N.W.2d 77, 82 (1966); *Head v. Metropolitan Life Ins. Co.,* 449 N.W.2d 449, 453 (Minn.App.1989), *pet. for rev. denied* (Minn. Feb. 21, 1990).

■ The trial court's rejection of Scott's allegation that the parties intended the term "cohabit" to have an economic facet is functionally a determination that her allegation was not credible. We must defer to trial court credibility determinations. *See Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988); *General v. General,* 409 N.W.2d 511, 513 (Minn.App.1987).

■ Scott also alleges the trial court failed to make the specific findings necessary to limit a trial court's ability to modify maintenance. *See* Minn.Stat. § 518.552, subd. 5 (1990). Because this argument functionally challenges the trial court's adoption of the cohabitation provision, it is untimely. The decree was entered in 1991 and not appealed. *See* Minn.R.Civ.App.P. 104.01 (appeal from judgment may be taken within 90 days of its entry); *Bongard v. Bongard,* 342 N.W.2d 156, 158 (Minn.App. 1983) ("Time limits on appeals are jurisdictional").

Auer's motion for attorney fees is denied.

### DECISION

The trial court appropriately distinguished between a court-ordered cohabitation clause and the instant stipulated cohabitation clause.

Affirmed.

HUSPENI, Judge (concurring specially).

We must accord great weight to a trial court's construction of its own decree. Therefore, I support an affirmance in this case. However, I continue to be concerned about the problems of proof which arise when courts are called upon to implement cohabitation clauses in dissolution decrees.

Parties are unlikely to dispute the occurrence of the event which triggers a "remarriage" or "date-certain" provision for termination of maintenance. I fear, however, that parties will rarely be able to agree on the event or circumstance which activates a cohabitation clause. Emotionally and financially burdensome post-decree litigation is almost certain to result from that inability to agree.

Litigation of cohabitation clauses can be avoided, it seems to me, only if parties and attorneys who stipulate to inclusion of such a clause in a dissolution decree scrupulously set forth with the greatest specificity possible what the word "cohabitation" means to them.