*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1776**

In re the Marriage of: Anne Elizabeth Castle-Heaney, petitioner,
Respondent,

vs.

Bruce Edward Heaney,
Appellant .

**Filed September 22, 2014
Reversed and remanded
Hooten, Judge**

Scott County District Court
File No. 70-FA-11-28455

Anne Elizabeth Castle-Heany, Prior Lake, Minnesota (pro se respondent)

John Thomas Burns, Jr., Burnsville, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant-father argues that the district court erred by awarding respondent-mother sole physical custody of their two youngest minor children without making adequate findings of fact. Respondent-mother also appeals, contending that the district court erred in determining the amount and duration of her spousal-maintenance award.

Because the district court based its spousal-maintenance award on errors of law and failed to make the necessary findings of fact regarding its custody and spousal maintenance determinations, we reverse and remand.

## FACTS

Appellant Bruce Heaney and respondent Anne Castle-Heaney married in 1991. The parties separated, and Anne petitioned for divorce in October 2011. Among other issues, the parties disputed the physical custody of the parties' minor children: E., M., and C., who were, at the time of the bench trial in December 2012, 17, 13, and 9 years old, respectively. The parties' oldest child, Matthew, was 19 years old and had lived with Bruce since the separation.

The parties agreed to joint legal custody of the minor children, but each sought sole physical custody. Anne testified that she would reluctantly accept joint physical custody. Bruce was against joint physical custody.

Dr. Michelle Millenacker was appointed as a neutral custody evaluator. Her written report provides that E., who was especially close to Matthew, wanted to live with her father on a full-time basis. E. told Dr. Millenacker that "[s]he does not particularly get along with [M.] as they have such divergent interests," but that "[s]he and [C.] are able to enjoy time together when they go shopping."

M. confirmed that while he "does not always get along well with [E.] and [that] they do not spend a lot of time together," "he enjoys watching a movie with her." M. also indicated that he enjoyed playing computer games with C. M. told Dr. Millenacker that he preferred to spend time with his father and brother "because he misses them."

2

C. told Dr. Millenacker that she wanted to increase her parenting time with her father so that she would be with him every weekend instead of every other weekend. According to Dr. Millenacker, C. "probably has the best relationship with her mother out of all of the kids," but that she "would be devastated not to be with her siblings because her siblings are her support group." Dr. Millenacker opined that C. "needs to be with her siblings" and that "[t]hose kids need to be together."

Dr. Millenacker noted that Anne's "level of anger and physical aggressiveness towards the children is concerning," recognizing that "[t]here are a number of similarities between the older three children's experiences with their mother," in that "[s]he has been physically aggressive to all of them, yelled at them and has tried to thwart normal adolescent development and independence." "Also of concern [to Dr. Millenacker] is that out of the parties' four children, three have expressed a desire to live with their father on a full-time basis." According to Dr. Millenacker, "[t]his was never a case where one or both wanted joint physical custody." She opined that joint physical custody would not be ideal and that she viewed "this as a case where one [parent] needs to have sole physical custody." Dr. Millenacker recommended that Bruce be granted sole physical custody of all the minor children because he "is more encouraging of the kids" while Anne has "a punitive style."

Dr. Susan Phipps-Yonas reviewed Dr. Millenacker's report and conducted a second custody evaluation. According to Dr. Phipps-Yonas's written report, E. "indicated that she wants to live at her father's home on a full time basis and see her mother only when she so chooses." Dr. Phipps-Yonas stated that Anne's "relationship

with [E.] is seriously strained and shows signs of dysfunction that go beyond typical mother/adolescent-daughter problems."

M. desired more time with Bruce but did not convey to Dr. Phipps-Yonas that he wanted to live with Bruce full-time. Dr. Phipps-Yonas opined that Anne's "relationship with [M.] is adequate at this point in time, but [that] she may need to change the manner in which she parents teenagers."

Dr. Phipps-Yonas stated that C. "did not want to offer any preference although she believes it would be best for her to be on the same schedule as her older siblings." Dr. Phipps-Yonas opined that Anne "does have a close and loving connection with [C.]" and that their "relationship is very solid and healthy." Dr. Phipps-Yonas testified that "even though [C. is] not particularly close to [E.] and [M.], she appreciates . . . the nature of their sibling relationships, which . . . is why she doesn't somehow want to . . . be one place when they're somewhere else."

According to Dr. Phipps-Yonas, the minor children "adore their older brother" and believe that Matthew is "by far the best sibling in the family." Dr. Phipps-Yonas observed "some rivalries and conflicts amongst these three youngsters, but they do not seem to be serious in nature and could likely be easily modified with some professional help." Dr. Phipps-Yonas opined that "it might well be detrimental to [the] children were one parent granted sole authority over the [children's] upbringing." She testified that doing so "would in effect say that one parent is devalued relative to the other and . . . [that it] wouldn't resolve at all the underlying issues." Dr. Phipps-Yonas was

concerned with either parent having sole physical custody of the children. She recommended that the parties be awarded joint physical custody.

The parties also disputed the amount and duration of spousal maintenance. At the time of trial, Anne was 51 years old and was earning $14.27 per hour as a teacher's assistant. She worked about 25 hours per week. A vocational and psychological evaluation was conducted and admitted as evidence. Also admitted was evidence of the parties' paystubs, tax returns, and expense budgets.

In April 2013, the district court awarded sole physical custody of E. to Bruce and sole physical custody of M. and C. to Anne. The district court ordered Bruce to pay $1,461 in monthly child support beginning on July 1, 2013. The district court also ordered Bruce to pay temporary spousal maintenance for five years beginning on April 1, 2013: $1,800 per month for the first two years; $1,300 per month for year three; $800 per month for year four; and $500 per month for year five.

Bruce moved for amended findings of fact and conclusions of law, arguing that, among other issues, the district court's findings are "incomplete" and that "[n]o one has recommended that custody be split and [for Anne to] have sole physical custody of [M.] and [C.]." Bruce requested the district court to grant him sole physical custody of M. and C. Anne also moved for amended findings of fact and conclusions of law, contending that, among other issues, the district court erred by not awarding permanent spousal maintenance.

At the hearing on the motions, the district court stated:

> I saw a big difference, and I think the evaluators did too, with [the] teenagers and [the] two younger kids. Go back over all these reports and see what Millenacker and Phipps-Yonas said about [C.] and [M.] It's different. . . . [Y]ou cannot rule teenagers with an iron fist. . . . And if the same thing happens with [M.] and [C.], you'll see them leave and they'll go to their dad's.

The district court amended findings unrelated to the children's custody and spousal maintenance. Bruce appeals the custody determination. Anne, by notice of related appeal, challenges the spousal-maintenance award.

## D E C I S I O N

### I.

We first note that, contrary to Bruce's characterization, the district court's custody award of E. to Bruce and M. and C. to Anne does not involve a split-custody situation warranting a higher level of scrutiny. *See Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn. App. 1984) ("While split custody decisions may be made within the discretion of the [district] court, they are viewed as unfortunate and are carefully scrutinized." (quotation omitted)). At the time that the district court issued its amended findings, E. was 18 years old. E. is now 19 years old. Accordingly, there is no longer jurisdiction to determine E.'s custody, and that issue is moot. *See* Minn. Stat. § 518.17, subd. 3 (a) (1), (2) (2012) (directing the district court, upon the dissolution of a marriage, to address the legal and physical custody of "the *minor* children of the parties") (emphasis added); Minn. Stat. § 645.45 (14) (2012) (defining a "minor" as an individual under the age of 18); *see also* Minn. Stat. § 518D.102(c) (2012) (defining "child" under the Minnesota Uniform Child Custody Jurisdiction and Enforcement Act as "an individual who has not attained 18

6

years of age"); Minn. Stat § 518D.201(a), (b) (2012) (providing the "exclusive jurisdictional basis for making a child custody determination by" a Minnesota court). The sole issue before us is the physical custody of M. and C. Because their custody was awarded to Anne, this case does not present a split-custody situation

Turning to the merits, Bruce argues that the district court abused its discretion because its custody determination is unsupported by sufficiently specific findings. We agree.

A child-custody decision must be based on the best interests of the child. Minn. Stat. § 518.17, subd. 3(a) (2012). When examining the best interests of a child, the district court must consider the relevant factors specified in Minn. Stat. § 518.17, subd. 1 (2012). We review a custody determination for an abuse of discretion. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). "[I]t is especially important that the basis for the [district] court's decision be set forth with a high degree of particularity if appellate review is to be meaningful." *Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971). As the supreme court has held:

> [T]he family court must make written findings which properly reflect its consideration of the factors listed in [Minn. Stat. §] 518.17, subd. 1. Such findings would (1) assure consideration of the statutory factors by the family court; (2) facilitate appellate review of the family court's custody decision; and (3) satisfy the parties that this important decision was carefully and fairly considered by the family court.

*Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976).

Here, in discussing the best-interests factors, the district court stated that "[e]ach parent has demonstrated the ability to adequately provide for the children's" needs, "[e]ach parent has the ability and temperament to act as the primary caretaker of the children," "[t]he children are well cared for by each," "[t]he children love and are loved by each of their parents," "[b]oth parents participate in various activities with the children," "[t]he children are adjusted to both of their homes," "[b]oth of the homes adequately meet the needs of the children," "[b]oth [parents] can provide adequate living arrangements," "[t]he parties each have the capacity to provide the children with love, affection and guidance," and "[t]he parties share similar backgrounds." The district court also recognized that the children "are more relaxed, comfortable and engaged with one another in their father's home," and that Anne "seems to have trouble controlling her emotions and it affects the children" and "has attempted to limit [Bruce's] contact with the children in a minor way since the separation."

We agree with Bruce that the district court's order awarding sole physical custody of M. and C. to Anne lacks sufficient particularity so as to facilitate appellate review and satisfy the parties that the district court carefully and fairly considered its decision. While the district court listed the best-interests-of-the-child factors and made some relevant factual findings as to each factor, the district court's order failed to state how consideration of the best-interests factors impacted its decision or explain why it awarded Anne, rather than Bruce, sole physical custody of the minor children. The district court's findings indicate that both parents could adequately care for the children, but Anne has shortcomings as a parent. Based on its comments at the motion hearing, the district court

8

appears to have based its decision in part on the belief that Anne's relationships with M. and C. are healthier than her relationships with Matthew and E. But the fact that Anne has adequate relationships with M. and C. does not necessarily mean that it would be in the best interests of M. and C. for Anne, rather than Bruce, to have sole physical custody of them. And in a situation where siblings are involved, the district court must consider "the interaction and interrelationship of the child with . . . siblings . . . who may significantly affect the child's best interests." Minn. Stat. § 518.17, subd. 1(5). The parties presented ample evidence of the siblings' relationships with each other. We cannot tell from the district court's order whether it considered this evidence or other evidence related to the best-interests factors.

Moreover, the need for particularized findings is crucial here because the district court rejected the recommendations of two custody evaluators. Although a custody evaluation "may be disregarded when outweighed by other evidence," *Pikula*, 374 N.W.2d at 712, the rejection of an evaluation "enlarges the need for particularized findings," *Lawver v. Lawver*, 360 N.W.2d 471, 473 (Minn. App. 1985). Here, Dr. Millenacker recommended that sole physical custody of M. and C. be granted to Bruce, and Dr. Phipps-Yonas recommended that Bruce should share custody. Neither evaluator recommended that Anne should have sole physical custody of the minor children. Although the district court has discretion to disregard the evaluations, it must explain what other evidence outweighs the recommendations of the custody evaluators. The district court failed to do so here.

For these reasons, we must reverse the award of sole physical custody of M. and C. to Anne and remand this matter to the district court for reconsideration due to its failure to provide sufficient findings of fact to support such award. On remand, the district court is to evaluate and weigh the best-interests factors, make a custody determination, and set forth adequate findings in support of such determination. We emphasize that our decision does not address the merits of the district court's prior custody award, but is based only upon our inability to review the award in light of the district court's insufficient findings. Therefore, on remand, the district court has the discretion to re-instate its prior custody award, or make any other custody award that is in the best interests of the children, so long as the award is supported by sufficient findings and the law.

## II.

Anne argues that the district court abused its discretion in determining the spousal-maintenance award. We agree.

A district court must consider eight relevant factors in deciding the amount of spousal maintenance and whether to award it on a permanent basis. Minn. Stat. § 518.552, subd. 2 (2012). "A district court generally has broad discretion in its decisions regarding spousal maintenance. The standard of review in spousal-maintenance determinations is whether the district court abused its discretion by improperly applying the law or making findings unsupported by the evidence." *Melius v. Melius*, 765 N.W.2d 411, 414 (Minn. App. 2009) (citation omitted). A district court abuses its discretion if its factual findings are not sufficiently detailed. *Stevens v.*

10

*Stevens*, 501 N.W.2d 634, 636–37 (Minn. App. 1993). "Even where the record supports the [district] court's decision, the failure to make specific findings compels a remand." *Id.* at 637.

Relevant factors for determining maintenance include the parties' incomes and expenses. Minn. Stat. § 518.552, subd. 2(a), (g). Here, the district court determined: "[Anne] has a gross monthly income of $1,391.33 and reasonable monthly living expenses of $5,552. [Bruce] has a gross monthly income of $9,879.23 and reasonable monthly expenses of $4,720." On appeal, the parties do not dispute the district court's findings regarding their gross monthly incomes or Anne's reasonable monthly living expenses.

But, Anne argues that the district court improperly calculated Bruce's monthly living expenses by including "expenses attributed to the parties' adult son, Matthew." It's unclear how the district court calculated Bruce's expenses, but the finding of $4,720 almost matches the total from Bruce's submitted expense schedule, which includes a line item of $200 for "Matthew." The record provides no clarification of this line item. In any event, we have held that the district court "must fairly determine maintenance without considering the needs of the adult children in setting the amount of maintenance." *Musielewicz v. Musielewicz*, 400 N.W.2d 100, 103 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). Accordingly, the district court abused its discretion by including Matthew's expenses in the calculation of Bruce's reasonable living expenses.

11

Anne also complains that the district court erred by awarding only $1,800 per month in spousal maintenance for the first two years and by setting a reduction in the amount of future maintenance, arguing that "such a result clearly does not balance [her] need with Bruce's ability to pay." Based on the district court's determinations on incomes, expenses, child support, and spousal maintenance, Anne would have a monthly shortfall of $889.67, while Bruce would have a monthly surplus of $1,916.23.[1] But, a maintenance award generating a budgetary shortfall for one or both parties does not automatically render the award of spousal maintenance an abuse of discretion. *See Ganyo v. Engen*, 446 N.W.2d 683, 687 (Minn. App. 1989) (upholding spousal-maintenance award that resulted in shortfall for husband). Indeed, there are numerous other factors to be considered in addition to the parties' incomes and expenses that are to be considered in the determination of an equitable spousal-maintenance amount. *See* Minn. Stat. § 518.552, subd. 2.

Even so, the district court's discussion on spousal maintenance fails to explain how other factors contributed to its determination. We cannot tell from the decision how the district court arrived at its maintenance amount and schedule. Moreover, the district court improperly used gross income in determining maintenance. A district court "must make a determination of the payor spouse's net or take-home pay." *Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn. App. 1985), *review denied* (Minn. July 26,

---

[1] Anne: $1,391.33 (gross income) + $1,461 (child support) + $1,800 (maintenance) = $4,652.33 (total monthly income) − $5,552 (expenses) = $899.67 shortfall.

Bruce: $9,897.23 (gross income) − $1,461 (child support) − $1,800 (maintenance) − $4,720 (expenses) = $1,916.23 surplus.

1985). Here, the district court used the parties' gross monthly incomes even though there was ample evidence of the parties' income tax liabilities, including their paystubs and tax returns. Accordingly, the district court abused its discretion by both failing to explain its decision and using gross income.

Finally, Anne argues that the district court erred by not awarding permanent spousal maintenance. The duration of maintenance must be determined by considering the same eight factors for determining the amount of maintenance. Minn. Stat. § 518.552, subd. 2. "Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3 (2012). The statute "requires that a [district] court order permanent maintenance if the court is uncertain that the spouse seeking maintenance can ever become self-supporting." *Aaker v. Aaker*, 447 N.W.2d 607, 611 (Minn. App. 1989), *review denied* (Minn. Jan. 12, 1990).

Here, the district court determined that Anne "is currently unable to provide adequate self-support and support for the minor children through her current employment." The district court also noted Anne's "spotty employment history throughout the marriage, . . . time away from the workforce, lack of some minor job skills and training, and . . . minor physical limitations." Despite the district court's recognition of Anne's employment limitations, the district court again failed to explain how the statutory factors contributed to its decision to reject Anne's request for permanent spousal maintenance. For this reason as well, the district court abused its discretion.

Because the district court determined the spousal-maintenance award by improperly including Matthew's expenses in determining Bruce's monthly expenses and by using the parties' gross incomes, instead of their net incomes, and because the district court did not provide adequate findings in support of its denial of Anne's request for permanent spousal maintenance, we reverse the district court's order with respect to the spousal-maintenance award and remand for further consideration consistent with this decision. On remand, the district court has the discretion to reopen the record and determine whether, and what, additional evidence should be considered to reach an equitable outcome.

**Reversed and remanded.**